UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 22-cv-20863-BLOOM/Otazo-Reyes**

COMPANY.COM, LLC,
*a Delaware For-Profit Corporation*,

      Plaintiff,

v.

CINDI'S RESTAURANT CORP.,
*a Texas For-Profit Corporation*
*doing business as*
Cindi's New York Deli Restaurant,
and ANH VO,
*an individual, as Personal Guarantor*,

      Defendants.
_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendants Cindi's Restaurant Corp. ("Cindi") and Anh Vo's ("Vo") (collectively, "Defendants") Motion to Dismiss, ECF No. [22] ("Motion"). Plaintiff Company.com, LLC ("Plaintiff") filed a Response in Opposition, ECF No. [29] ("Response"), to which Defendants filed a Reply, ECF No. [32] ("Reply"). The Court has carefully reviewed the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

**I.    BACKGROUND**

On March 22, 2022, Plaintiff filed its Complaint against Defendants. *See* ECF No. [1] ("Complaint"). Plaintiff thereafter filed an Amended Complaint against Defendants, asserting two counts: breach of contract against Cindi ("Count I"); and enforcement of personal guarantee against Vo ("Count II"). *See* ECF No. [18] ("Amended Complaint").

Case No. 22-cv-20863-BLOOM/Otazo-Reyes

According to the Amended Complaint, Plaintiff is a Delaware corporation that was transacting business in Florida, had substantial facilities in Florida, and provided services under the contracts at issue from its facilities in Florida at all relevant times. ECF No. [18] ¶¶ 4, 7. Cindi is a Texas corporation with locations in Texas. *Id.* ¶ 5. Vo is a Texas resident. *Id.* ¶ 6. On or about December 4, 2018, Plaintiff entered into several agreements with Cindi for Plaintiff to provide credit card processing services for Cindi's locations in Texas. *Id.* ¶ 11. Vo personally guaranteed Cindi's performance and payment under the contracts. *Id.* ¶ 13. Defendants subsequently terminated the contracts and refused to pay the early termination fee ("ETF"). *Id.* ¶¶ 15-16.

On July 5, 2022, Defendants filed the instant Motion. ECF No. [22]. Defendants contend that the case should be dismissed because the Court lacks personal jurisdiction over Defendants. *See id.* Plaintiff responds that the case should not be dismissed because the Court has personal jurisdiction over Defendants. *See* ECF No. [29].

**I.     LEGAL STANDARD**

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929, (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Additionally, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct.

2

1955. If the facts satisfy the elements of the claims asserted, a defendant's motion to dismiss must be denied. *Id.* at 556.

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). "Once the plaintiff pleads sufficient material facts to form a basis for *in personam* jurisdiction, the burden shifts to the defendant to challenge plaintiff's allegations by affidavits or other pleadings." *Carmouche v. Carnival Corp.*, 36 F. Supp. 3d 1335, 1388 (S.D. Fla. 2014), *aff'd sub nom. Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201 (11th Cir. 2015). A defendant challenging personal jurisdiction must present evidence to counter the plaintiff's allegations. *Internet Sols. Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009).

"Where . . . the Defendant submits affidavit(s) to the contrary, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002); *see also Internet Sols. Corp.*, 557 F.3d at 1295; *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990). If the defendant makes a sufficient showing of the inapplicability of the long-arm statute, "the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." *Polskie Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 972 (11th Cir. 1986). Conclusory statements, "although presented in the form of factual declarations, are in substance legal conclusions that do not trigger a duty for Plaintiffs to respond with evidence of their own supporting jurisdiction." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999).

In addressing whether personal jurisdiction over a nonresident defendant exists, "[t]he district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (citing *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988)). Moreover, "where the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff." *Id.*

Furthermore, a court must conduct a two-part inquiry when deciding the issue of personal jurisdiction. *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623 (11th Cir. 1996). First, the court must determine whether the applicable state statute governing personal jurisdiction is satisfied. *Sculptchair,* 94 F.3d at 626. Florida's long-arm statute recognizes two kinds of personal jurisdiction over a nonresident defendant: general jurisdiction and specific jurisdiction. *See* Fla. Stat. §§ 48.193(1)–(2); *see also easyGroup Ltd. v. Skyscanner, Inc.*, No. 20-20062-CIV, 2020 WL 5500695, at *6 (S.D. Fla. Sept. 11, 2020). The Eleventh Circuit has held that the reach of Florida's long-arm statute is a question of state law, and that federal courts must adhere to the statutory constructions offered by the Florida Supreme Court and Florida's District Courts of Appeal. *See Louis Vuitton Malletier, S.A.*, 736 F.3d at 1352. If the requirements of the long-arm statute are satisfied, under either general jurisdiction or specific jurisdiction, then the court must also consider the federal Due Process Clause. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1250-51 (11th Cir. 2000).

The court's analysis of the Due Process Clause depends on three factors: (1) defendant's purposeful availment of the forum state; (2) the cause of action arising out of the activities of which the defendant purposefully availed himself; and (3) reasonable foreseeability of the defendant being haled into court in the forum state. *See Future Tech.*, 218 F.3d at 1250-51 (citing *Burger*

4

*King*, 471 U.S. at 475). In addition, the court must determine whether exercising jurisdiction will comport with traditional notions of fair play and substantial justice, meaning the court must balance: "(a) the burden on the defendant; (b) the forum state's interest in adjudicating the dispute; (c) the plaintiff's interest in obtaining convenient and effective relief; (d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (e) the shared interest of the several states in furthering fundamental substantial social policies." *Id.* at 1251 (citing *Burger King*, 471 U.S. at 466).

**II.   DISCUSSION**

**A.   *Prima Facie* Case for Personal Jurisdiction**

Before the Court can address the parties' arguments and affidavits on the issue of personal jurisdiction, the Court must first address whether Plaintiff has made a *prima facie* case for personal jurisdiction in its Amended Complaint. *See Louis Vuitton Malletier, S.A.*, 736 F.3d at 1350 ("A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction.'") (quoting *United Techs. Corp.*, 556 F.3d at 1274).

Upon review of the Amended Complaint, Plaintiff has set forth sufficient allegations to make a *prima facie* case for the Court's personal jurisdiction over Defendants pursuant to Florida's long-arm statute. *See* ECF No. [18] ¶¶ 7-8 (citing Fla. Stat. §§ 48.193(1)(a)(7), 48.193(1)(a)(9)).[1] Plaintiff alleges that the contracts between Plaintiff and Defendants required performance in Florida, Defendants purposefully availed themselves of Florida, and it was reasonable for Defendants to expect that they would be haled into a Florida court. *See id.* Plaintiff also includes a copy of the contracts, which indicate that Cindi contracted with Plaintiff for credit card

---

[1] Plaintiff does not allege that the Court has general jurisdiction over Defendants. *See generally* ECF No. [18].

processing services, and Vo contracted with Plaintiff to personally guarantee Cindi's performance and payment. *See id.* at 14, 20, 26, 31, 37. The contracts also include a choice-of-law provision and choice-of-venue provision as follows:

> **44.1. Choice of Law**. Choice of Law. Our Agreement shall be governed by and construed in accordance with the laws of the State of Florida (without regard to its choice of law provisions).
>
> **44.2. Venue**. We have substantial facilities in the State of Florida and many of the services provided under this Agreement are provided from these facilities. The exclusive venue for any actions or claims arising under or related to this Agreement shall be in the appropriate state or federal court located in Dade County, Florida.

*Id.* at 76.

Because Plaintiff has made a *prima facie* case for specific personal jurisdiction, the Court now considers Defendants' arguments and affidavits challenging Plaintiff's contention that the Court has personal jurisdiction. *See Carmouche*, 36 F. Supp. 3d at 1388.

### B. Specific Jurisdiction

Defendants first challenge specific personal jurisdiction under Fla. Stat. § 48.193(1)(a)(7). *See* ECF No. [22] at 12-15. Florida courts have specific personal jurisdiction over defendants for any cause of action that arises from "[b]reaching a contract in this state by failing to perform acts required by the contracts to be performed in this state." Fla. Stat. § 48.193(1)(a)(7). Defendants argue that Fla. Stat. § 48.193(1)(a)(7) does not apply because Defendants never breached the contracts by failing to perform acts required by the contracts to be performed in Florida. The contracts at issue were for services provided by Plaintiff to Cindi in Texas. *See id.* at 13. Cindi paid for the services by having Plaintiff debit Cindi's bank account in Texas. *See id.* Cindi was not required to make any payments for Plaintiff's services in Florida. *See id.* Defendants point out that the contracts are silent as to the place of payment for the ETF, and this Court previously held that the "place of payment does not confer specific jurisdiction under Florida's long-arm statute." *See*

*id.* at 14 (citing *Ferenchak v. Zormati*, 572 F. Supp. 3d 1284, 1293 (S.D. Fla. Nov. 16, 2021)). Defendants further submit that sending a termination letter to Plaintiff's Florida office does not constitute a breach of the contracts under Fla. Stat. § 48.193(1)(a)(7). *See id.* at 13.

Plaintiff responds that Fla. Stat. § 48.193(1)(a)(7) is applicable because Defendants breached the contracts in Florida by failing to pay the ETF in Florida. *See* ECF No. [29] at 7-8. Plaintiff argues that the contracts required Defendants to pay the ETF to Plaintiff's contractually designated address in Florida. *See id.* at 8. To the extent that Defendants argue that the contracts are silent as to the location of payment – that is, the location from which Defendants were required to send the ETF – Plaintiff argues that Florida have consistently presumed the place of residence of the payee to be the location of payment if the contract is silent as to the place of payment. *See id.* at 9-10 (citing *Glob. Satellite Commc'n Co. v. Sudline*, 849 So. 2d 466, 468 (Fla. 4th DCA 2003); *Buto v. Sirius Int'l Ins. Co.*, 807 So.2d 674 (Fla. 3d DCA 2001); *Harris v. Caribank*, 536 So.2d 394 (Fla. 4th DCA 1989); *First Nat'l Bank of Kissimmee v. Dunham*, 342 So.2d 1021, 1022 (Fla. 4th DCA 1977)). Plaintiff further submits that Defendants misinterpreted *Ferenchak* because the Court determined in *Ferenchak* that the defendant's failure to pay in Florida standing alone was not sufficient to satisfy Fla. Stat. § 48.193(1)(a)(7), but the defendant's failure to pay in Florida along with the other contacts in Florida could be sufficient. *See Ferenchak*, 572 F. Supp. 3d at 1293-94. The Court in *Ferenchak* concluded that it had no personal jurisdiction only after finding that the defendant had no other contacts in Florida. *See id.* Here, Plaintiff avers that Defendants not only failed to pay the ETF in Florida, but Defendants also sought Plaintiff's services in Florida by regularly calling Plaintiff's office in Florida on routine service matters. *See* ECF Nos. [29] ¶ 11, [29-1] ¶ 17. In addition, Defendants decided to contract with Plaintiff, being fully aware that

Plaintiff was located in Florida. *See* ECF No. [18] at 86. Plaintiff finally points out that Defendants sent a portion of the ETF to Plaintiff's office in Miami. *See id.* at 10.

In the Reply, Defendants maintain that the contracts do not specify from where the ETF must be paid, but Defendants do not address Plaintiff's case law that establishes that when a contract is silent as to the place of payment, the place of residence of the payee is presumed to be the place of payment. *See* ECF No. [32] at 4. Defendants also argue that Defendants' counsel sent the termination letter to Plaintiff's Florida office, and the actions of their counsel do not support the Court's exercise of personal jurisdiction under Fla. Stat. § 48.193(1)(a)(7). *See id.* at 7-8. Further, Defendants' partial payment of the ETF that may have been sent to Florida is inapposite since Plaintiff has refused to confirm whether the payment was received in Florida. *See id.* at 8. Finally, Defendants argue that Plaintiff fails to establish that Vo called Plaintiff's offices in Florida for customer service and Plaintiff's affidavit on the matter is misleading since the record evidence does not support any inference that Vo called Plaintiff's offices in Florida. *See id.* at 5-6.

The Court agrees with Plaintiff. As an initial matter, the Court notes that sending a termination letter does not constitute a breach of the contract under Fla. Stat. § 48.193(1)(a)(7). Defendants were within their rights to terminate the contract. Therefore, any argument that the termination letter was sent to Plaintiff's office in Florida is inapposite and cannot provide a basis for personal jurisdiction under Fla. Stat. § 48.193(1)(a)(7). It is also immaterial who sent the termination letter, Defendants or Defendants' counsel, given that the termination letter is not a breach of the contracts. The claim that Defendants failed to pay the ETF, however, is a purported breach of the contracts. The pertinent issue before the Court is whether the failure to pay the ETF constitutes a breach of the contracts *in Florida*.

The parties agree that the contracts do not specify from where Defendants must pay the ETF. *See* ECF Nos. [22] at 14-15, [29] at 9-10. However, as Plaintiff correctly notes, Florida courts consider the place of residence of the payee to be the location of payment when the contracts are silent as to the place of payment. *See Sudline*, 849 So. 2d at 468; *Buto*, 807 So.2d at 674; *Harris*, 536 So.2d 394; *First Nat'l Bank*, 342 So.2d at 1022. The contracts establish that Plaintiff's place of business is in Florida. *See* ECF No. [18] at 86. Defendants' own termination letter indicates that Defendants sent a partial payment for the ETF to Plaintiff's office in Miami. *See* ECF No. [18] at 88-90.[2] Given that the Court must apply Florida case law on this issue, *see Louis Vuitton Malletier, S.A.*, 736 F.3d at 1352, the Court determines that the place of payment is Florida, and Defendants' alleged failure to pay the ETF constitutes a purported breach of the contracts in Florida.[3]

However, as this Court noted in *Ferenchak*, the place of payment alone does not confer specific jurisdiction under Florida's long-arm statute. 572 F. Supp. 3d at 1293 (citing *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 503 (Fla. 1989) (holding that the mere failure to pay money in Florida, standing alone, would not suffice to obtain jurisdiction over a nonresident defendant)).[4] Here, Defendants had several additional contacts in Florida, other than the failure to pay the ETF in Florida. *See* ECF No. [29] at 3. It is apparent from the contract that Defendants

---

[2] Defendants' argument that Plaintiff fails to admit or deny receipt of the partial payment of the ETF is unavailing. *See* ECF No. [32] at 8. Whether Plaintiff admits or denies receipt of the partial payment in Florida does not negate that Defendants claim to have sent the partial payment to Florida, *see* ECF No. [18] at 88-90. As Defendants correctly note, it is Defendants' conduct, not Plaintiff's conduct, that matters in personal jurisdiction analysis. *See* ECF No. [22] at 18.

[3] To the extent that Defendants argue the contracts allow for Plaintiff to automatically extract the ETF from Cindi's bank account in Texas and Florida is not implicated with regard to the payment of the ETF, the Court is not persuaded. *See* ECF No. [22] at 15. The text of Fla. Stat. § 48.193(1)(a)(7) focuses on the location of the breach. As such, the material issue is where Defendants' alleged breach occurred, not how far Plaintiff's right to collect extends.

[4] Defendants belie the Court's holding in *Ferenchak* to the extent that they represent that this Court categorically held that the place of payment could not confer specific jurisdiction under Florida's long-arm statute. *See* ECF No. [22] at 14. In *Ferenchak*, the Court specifically cited *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 503 (Fla. 1989), where the Florida Supreme Court held that the mere failure to pay money in Florida, *standing alone*, would not suffice to obtain jurisdiction over a nonresident defendant.

contracted with Plaintiff while fully aware that Plaintiff was located in Florida. *See* ECF No. [18] at 86. Defendants also contracted for a Florida choice-of-law provision and Florida choice-of-venue provision. *See id.* at 76. Further, Vo and Cindi's representatives appear to have regularly contacted Plaintiff in Florida. *See* ECF Nos. [29-1] at 7-40. Although Defendants argue that the record evidence does not support Plaintiff's affidavit that Vo called Plaintiff's office in Florida, the Court disagrees. A review of the relevant exhibit indicates that there were multiple service calls by the "merchant" whose contact name is "Anh Tran Vo" and whose email address is "anhvo@msn.com." *Id.* at 7. Given that the Court "must construe all reasonable inferences in favor of the plaintiff" at this stage, *Madara*, 916 F.2d at 1514, Plaintiff has established sufficient additional contacts Defendants had in Florida, other than Defendants' purported failure to pay the ETF in Florida. Defendants' contacts in Texas, while substantial, do not negate the existence of these additional contacts in Florida. As such, this case is distinguishable from *Ferenchak* where the plaintiff failed to establish any additional contacts linking the defendant to Florida, other than the defendant's purported failure to pay the plaintiff in Florida.

In sum, Fla. Stat. § 48.193(1)(a)(7) applies, and the Court has specific jurisdiction over Defendants.

### C. Due Process

The Court must next determine whether the exercise of specific jurisdiction pursuant to Fla. Stat. § 48.193(1)(a)(7) will violate Defendants' Due Process rights. As noted above, the Court's analysis of the Due Process Clause depends on three factors: (1) Defendants' purposeful availment of Florida; (2) the cause of action arising out of the activities of which Defendants purposefully availed themselves; and (3) reasonable foreseeability of Defendants being haled into court in Florida. *See Future Tech.*, 218 F.3d at 1250-51 (citing *Burger King,* 471 U.S. at 475). In

addition, the Court must determine whether exercising jurisdiction will comport with traditional notions of fair play and substantial justice, meaning the Court must balance: "(a) the burden on the defendant; (b) the forum state's interest in adjudicating the dispute; (c) the plaintiff's interest in obtaining convenient and effective relief; (d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (e) the shared interest of the several states in furthering fundamental substantial social policies." *Id.* at 1251 (citing *Burger King*, 471 U.S. at 466).

Defendants argue that they did not purposefully avail themselves of Florida, and Plaintiff's cause of action did not arise out of their purposeful availment of Florida. *See* ECF No. [22] at 18-20. Defendants submit that Cindi contracted with Plaintiff for card processing services to be provided in Texas, not Florida. *See id.* at 18. Cindi did not seek out Plaintiff in Florida but negotiated the contracts through a salesperson in Texas. *See id.* Further, Defendants argue that Plaintiff's contacts in Florida cannot be used to create the minimum contacts necessary for purposeful availment because Defendants themselves must create the contact with the forum state. *See id.* at 19. Next, Defendants contend that the exercise of jurisdiction would not comport with traditional notions of fair play and substantial justice. Defendants emphasize that Defendants are based in Texas; the negotiation over and termination of the contracts took place in Texas; forcing Defendants to travel to Florida to defend themselves is "patently unfair;" there is no reason Plaintiff cannot seek redress in Texas courts; and the most efficient location for the lawsuit is in Texas. *Id.* at 20. Defendants finally submit that Plaintiff failed to file annual reports with the Florida Department of State during the life of the contracts. *See id.* As a result, Plaintiff is not a "Florida company," and Florida has little interest in the lawsuit. *Id.*

Case No. 22-cv-20863-BLOOM/Otazo-Reyes

Plaintiff responds that *Burger King* is instructive on the issue of purposeful availment. *See* ECF No. [29] at 10-13 (citing 471 U.S. 462). In *Burger King*, the Supreme Court noted that choice-of-law provisions should not be ignored when considering whether a defendant has purposefully invoked the benefits and protections of a state's law. *See* 471 U.S. at 481-82. The Supreme Court also noted that "[w]here . . . forum-selection provisions have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' their enforcement does not offend due process." *See id.* at 472 n.14. In this case, Defendants contracted for both a Florida choice-of-law provision and a Florida choice-of-forum provision, establishing Defendants' purposeful availment of Florida. Plaintiff argues further that Defendants knew Plaintiff's services would be rendered from Florida and Defendants engaged in consistent contact with Plaintiff's service department in Florida. *See* ECF No. [29] at 12-13. Defendants were aware that any notice to Plaintiff would have to be remitted to Florida, and Defendants sent their termination letter to Plaintiff's office in Florida. *See id.* at 13. Finally, Plaintiff's failure to file annual reports was a clerical error that was corrected and does not affect the enforcement of the contracts. *See id.* at 14.

Defendants reply that the facts of *Burger King* are distinguishable since *Burger King* involved a franchisor and franchisee, rather than a credit card processing company and a restaurant as in the instant case. *See* ECF No. [32] at 6-7.

The Court agrees with Plaintiff. First, with regard to Due Process, the Court finds *Burger King* to be dispositive on the issue of purposeful availment. Although Defendants rightly note that there are factual differences between *Burger King* and the instant case, the Supreme Court's holding that courts should consider choice-of-law and choice-of-forum provisions in analyzing purposeful availment did not hinge on the particular facts of the case. *See Burger King*, 471 U.S. at 482 ("Nothing in our cases, however, suggests that a choice-of-law *provision* should be ignored

in considering whether a defendant has 'purposefully invoked the benefits and protections of a State's laws' for jurisdictional purposes." (emphasis in original)). As such, considering the choice-of-law and choice-of-forum provisions in the contracts, which Defendants do not argue are unreasonable or unjust, the Court determines that Defendants purposefully availed themselves of Florida. *See* ECF No. [18] at 76. Defendants' argument that the contracts were negotiated through a salesperson in Texas is unavailing since the contracts include choice-of-law and choice-of-forum provisions that purposefully invoke the benefits and protections of Florida law. The Court further notes that Defendants, not Plaintiff alone, created the contact with Florida when Defendants agreed to the choice-of-law and choice-of-forum provisions. As for the remaining factors, it is apparent that the cause of action arises out of the contracts. It was also reasonably foreseeable, given the choice-of-venue provision, that Defendants could be haled into a court in Florida.

The Court next turns to traditional notions of fair play and substantial justice. With regard to the first factor on Defendants' burden, the Court notes that, by Defendants' own admission, Cindi is a restaurant chain with at least four (4) locations and has been in business for more than thirty (30) years. *See* ECF No. [22] at 3.[5] Vo is the president of Cindi and has transformed Cindi "into a Dallas institution with multiple locations in the city." *Id.* at 4. Vo was named Woman Entrepreneur of the Year in 2012 and is an active member of the Dallas community who regularly donates her time, money, and services. *See id.* Considering Defendants' resources, the Court does not consider Defendants travelling to Florida to defend themselves a "patently unfair" burden. *Id.* at 20.

Second, with regard to Florida's interest in adjudicating the dispute, although Plaintiff failed to file annual reports between September 25, 2020, and July 27, 2022, the period in question

---

[5] Although the contracts were for five (5) locations, Defendants represent that the fifth location was closed in 2021. *See* ECF No. [22] at 3 n.2.

in this lawsuit spans from December 4, 2018, when the contracts were signed, to November 26, 2021, when Defendants terminated the contracts. *See* ECF Nos. [29] at 14, [18] at 10, 88-90. As such, the period in question partially lies outside the lapses in time in which Plaintiff failed to file an annual report. Florida does have an interest in adjudicating a dispute involving an entity that was authorized to transact business in Florida during some of the relevant time period, even if the contracts were negotiated in Texas and some of the services were provided in Texas. Furthermore, Florida has an interest in adjudicating the dispute also because the office from which Plaintiff provided certain services is located in Florida. *See* ECF No. [18] at 86.

Third, while Defendants argue that "there is absolutely no reason that [Plaintiff] cannot seek redress in Texas courts," ECF No. [22] at 20, the Court notes the obvious fact that the choice-of-venue provision dictates Florida as the appropriate venue. Per the choice-of-venue provision, Plaintiff cannot seek redress in Texas courts. As such, Plaintiff's interest in obtaining convenient and effective relief also favors the exercise of personal jurisdiction in Florida.

Fourth, the interstate judicial system's interest in obtaining the most efficient resolution of controversies also favors Florida considering the choice-of-law provision. It would be more efficient for a court in Florida to resolve the issues applying Florida law as opposed to a Texas court applying Florida law.

Fifth, the final factor regarding the shared interest of the several states in furthering fundamental substantial social policies does not weigh in favor of Florida or any other state in this case. As such, upon balancing the factors, the Court determines that the exercise of personal jurisdiction does not violate traditional notions of fair play and substantial justice.

In sum, the exercise of personal jurisdiction pursuant to Fla. Stat. § 48.193(1)(a)(7) does not violate Defendants' Due Process rights or traditional notions of fair play and substantial justice.

Given the Court's determination, the Court need not reach arguments related to Fla. Stat. § 48.193(1)(a)(9).

### III. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion, **ECF No. [22]**, is **DENIED**.

2. Plaintiff's Motion for Leave to File Sur-Reply in Opposition of Defendants' Second Motion to Dismiss, **ECF No. [35]**, is **DENIED AS MOOT**.

3. Defendants shall answer Plaintiff's Complaint on or before **August 19, 2022**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 12, 2022.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record